William MISSERT, Plaintiff,

v.

**TRUSTEES OF BOSTON UNIVERSITY, et al.,**
Defendants.

Civil Action No. 99–10803–PBS.

United States District Court,
D. Massachusetts.

Oct. 20, 1999.

William F. York, Gilman, McLaughlin & Hanrahan, Boston, MA, for plaintiff.

Lawrence S. Elswit, Office of the General Counsel, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

## I. *INTRODUCTION*

Plaintiff, Dr. William Missert ("Missert"), alleges that defendants, Trustees of Boston University ("BU") and Dr. Anthony Gianelly ("Gianelly"), his faculty advisor, deprived him of his rights to due process and equal protection guaranteed by the Fourteenth Amendment of the United States Constitution when they wrongfully dismissed him from the BU Graduate School of Dentistry. Dr. Missert also alleges various state causes of action, including violation of the Massachusetts Declaration of Rights and breach of contract.[1]

The defendants have moved to dismiss on the ground that BU's academic decision to terminate plaintiff is not a state action subject to constitutional scrutiny because BU is a private university.

After hearing, the motion to dismiss the federal and state constitutional claims is *ALLOWED,* and the other claims arising under state law are remanded.

1. The complaint was originally filed in Middlesex Superior Court, and later removed. It alleges that the dismissal was in violation of public policy under state law (Count I), violation of right to due process (Count II), violation of right to equal protection (Count III), violation of 42 U.S.C. § 1983 (Count IV), and breach of contract (Count V).

## II. *BACKGROUND*

When all reasonable inferences are drawn in favor of the nonmoving party, the complaint alleges the following facts:

In 1995, Missert was admitted by the BU School of Graduate Dentistry to a thirty-six month program in orthodontics. Completion of the program would result in the award of a Certificate of Advanced Graduate Study ("CAGS") and a Master of Science in Dentistry ("MSD"). Under the program requirements, Missert was to devote approximately one year to research. The BU Henry M. Goldman School of Graduate Dentistry Handbook requires students in the CAGS/MSD program to submit a research protocol to the department chairperson for review; to complete a thesis; and, finally, to present the research project in a seminar. The handbook also states that the deadline for the thesis defense is twenty-one days prior to the expected degree award date.

On September 4, 1995, Missert submitted a research protocol to his advisor, defendant Gianelly. Gianelly rejected the protocol, provided Missert with an alternative research protocol, and told Missert that he wanted to present the results of Missert's research at the American Association of Orthodontics ("AAO") meeting in the Spring of 1996. In January 1996, Missert was placed on probation for alleged lack of attendance and lack of production on his research. At the time he was placed on probation, Missert's deadline for his thesis defense and presentation was over thirty months away.

Missert's research protocol called for research on human subjects. One reason for the lack of progress on the research project was the unavailability of research subjects. Under federal regulations, 45 C.F.R. pt. 46, no research could be conducted until the protocol was approved by

BU's Institutional Review Board ("IRB"), known as the Human Investigatory Research Committee ("HIRC"). Missert asked Gianelly about receiving HIRC approval. Gianelly told him that he should proceed with the research without approval because Gianelly never sought HIRC approval in connection with conducting research on human subjects. In the absence of HIRC approval, Missert had no subjects upon which he could perform the research. He attempted, with no success, to use another student's research subjects and to use other orthodontic students.

In March 1996, Gianelly notified Missert that he would recommend that Missert be dismissed from the CAGS/MSD program. On April 25, 1996, Associate Dean Thomas Kilgore wrote to Missert and informed him that he had been suspended pending dismissal from the program and had ninety days to appeal the decision. Under BU policy, an action to dismiss a student cannot commence until 180 days after the first probation. Missert was placed on probation on January 24, 1996, and dismissed only ninety days later.

Missert appealed his dismissal, but the Post–Doctoral Curriculum Committee upheld his dismissal on November 19, 1996. Missert exhausted BU's internal appellate remedies for reversing the dismissal decision, and was advised on May 14, 1998 that his appeal was denied and not subject to further internal review. This lawsuit followed.

### III. STANDARD OF REVIEW

For purposes of a motion to dismiss for failure to state a claim, the Court takes as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." *Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992) (citing *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990)). A complaint should not

be dismissed under Fed.R.Civ.P. 12(b)(6) unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### IV. DISCUSSION

Missert alleges that the decision to discharge him for not conducting research prohibited by federal law violated his right to due process and equal protection as secured by the Fourteenth Amendment. He seeks compensatory and punitive damages, as well as equitable relief, pursuant to 42 U.S.C. § 1983.

BU contends that the complaint must be dismissed because it fails to allege a deprivation of a federal right which may be "fairly attributable to the state." *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). The threshold issue presented in this case is whether BU's decision to dismiss Dr. Missert can fairly be seen as governmental action.

#### A. Institutional Review Boards (IRBs)

Plaintiff insists that BU is a state actor because federal law requires it to establish an IRB to review and approve research carried out by its faculty members involving human subjects.[2] *See* 42 U.S.C. § 289(a); 45 C.F.R. pt. 46. An analysis of the federal law establishing IRBs is important to understand this core dispute. Section 289(a) provides:

> The Secretary shall by regulation require that each entity which applies for a grant, contract, or cooperative agreement under this chapter for any project or program which involves the conduct

---

**2.** Plaintiff does not contend that there is an implied private right of action under 42

U.S.C. § 289(a).

of biomedical or behavioral research involving human subjects submit in or with its application for such grant, contract, or cooperative agreement assurances satisfactory to the Secretary that it has established (in accordance with regulations which the Secretary shall prescribe) a board (to be known as an "Institutional Review Board") to review biomedical and behavioral research involving human subjects conducted at or supported by such entity in order to protect the rights of the human subjects of such research.

The IRB is established under federal law to assure compliance with university and federal drug research standards. *See Halikas v. University of Minnesota,* 856 F.Supp. 1331, 1332 (D.Minn.1994) (noting that the parties agreed that the actions of the IRB constituted state action); *see generally* Dale L. Moore, *Recurrent Issues in the Review of Medical Research on Human Subjects,* 1 Alb.L.J.Sci. & Tech. 1, 8 (1991). As an entity created by federal law and mandated by federal law, the IRB is subject to federal regulations which comprehensively govern and regulate its activities. *See Esdale v. American Community Mut. Co.,* No. 94–C–4600, 1995 WL 263479 *3 (N.D.Ill. May 3, 1995) (discussing record-keeping obligations).

Under the regulations, the IRB must have at least five members, "with varying backgrounds to promote complete and adequate review of research activities commonly conducted by the institution." 45 C .F.R. § 46.107(a). More specifically, the IRB must contain "at least one member whose primary concerns are in scientific areas;" at least one member "whose primary concerns are in nonscientific areas;" and one member who is not affiliated with the institution at all. *Id.* §§ 46.107(b)–(d). The IRB reviews all research activities and either approves, disapproves, or approves contingent on certain modifications. *See id.* § 46.109(a). If the IRB decides to disapprove a research activity, its notification to the researcher and institution will include the reasons for its decision and will give the researcher an opportunity to respond in person or in writing. *See id.* § 46.109(d). In addition to reviewing initial research protocol, the IRB conducts periodic review of ongoing research. *See id.* § 46.109(e). Although research approved by the IRB may be subject to further appropriate review and approval or disapproval by officials of the institution, those officials may not approve the research if it has not been approved by an IRB. *See id.* § 46.112.

## B. State Action

In order to determine whether a private actor may be found to be a state actor, courts must examine: (1) whether there was a sufficient nexus between the state and the private actor which compelled the private actor to act as it did; (2) whether the private actor has assumed a traditionally public function; or (3) whether there is a sufficient "symbiotic relationship" between the state and the private actor so that the state might be recognized as a joint participant in the challenged activity. *See Ponce v. Basketball Fed'n,* 760 F.2d 375, 377 (1st Cir.1985); *Tynecki v. Tufts Univ. School of Dental Med.,* 875 F.Supp. 26, 31 (D.Mass.1994). Under any of these tests, BU's decision to terminate does not qualify as governmental action.

### 1. Nexus/Compulsion Test

The starting point for the analysis of the nexus inquiry is *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), which held that a decision to discharge or transfer a patient to a different level of care was not state action because it was made by physicians and nursing home administrators who are private parties. The Supreme Court explained its rationale: "Those decisions ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State." *Id.* at 1008, 102 S.Ct. 2777. The Court distinguished situations where

the state "affirmatively command[ed]" the discharge or transfer of Medicaid patients, *id.* at 1005, 102 S.Ct. 2777, or where medical judgments were made by utilization review committees mandated by federal regulation. *See id.* at 1008, 102 S.Ct. 2777.

A key inquiry under *Blum* and its progeny is which entity made the decision being challenged. *See id.* at 1005, 102 S.Ct. 2777; *see also Kraemer v. Heckler,* 737 F.2d 214, 220 (2d Cir.1984) (holding that the decision of a utilization review committee may well constitute state action where the "decision-making process itself appears to be governed largely" by federal guidelines); *Catanzano v. Dowling,* 60 F.3d 113, 117 (2d Cir.1995) (finding state action where private home care providers were required to make certain decisions under the statutory and regulatory scheme). Here, the decision being challenged is BU's decision to terminate one of its students for failure to meet its academic research requirements under standards set by the university. To be sure, Dr. Missert contends that the university faculty failed to set standards that comply with federal law regarding human research.[3] He also alleges personal animosity by Dr. Gianelly. However, the termination decision was not made by the IRB itself, and was not affirmatively mandated or governed by federal law. The termination decision, therefore, flunks the nexus test.

### 2. *Traditional Governmental Function Test*

■ With respect to the second test, a plaintiff must show that a private actor assumed powers that are "traditionally exclusively reserved to the state" in order for the private actor to be deemed a state actor. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). A private party becomes a state actor when it has been delegated a traditional government function.

*See, e.g., West v. Atkins,* 487 U.S. 42, 57, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (holding that a physician under contract with North Carolina to provide medical services to prison inmates was a state actor for purposes of § 1983); *Terry v. Adams,* 345 U.S. 461, 470, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (finding state action where a private organization conducted elections to select candidates for a primary election); *Marsh v. Alabama,* 326 U.S. 501, 508, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (holding that company-owned town is a state actor). The First Circuit has held that education is not a traditionally exclusive public function. *Johnson v. Pinkerton Academy,* 861 F.2d 335, 338 (1st Cir. 1988). Academic decision-making within a private graduate institution does not constitute state action. *See Tynecki,* 875 F.Supp. at 32. While an IRB's decision may well constitute state action under this traditional government function test, its decisions are not at issue here.

### 3. *Symbiosis*

■ Plaintiff also maintains that BU is in a symbiotic relationship with the federal government, thereby making it a state actor. Under this analysis, the actions of a private party constitute state action "where the State 'has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity.'" *Citizens to End Animal Suffering v. Faneuil Hall,* 745 F.Supp. 65, 72 (D.Mass.1990) (quoting *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). A key factor in determining the existence of a symbiotic relationship is whether the state profited from the discriminatory activity. *See Ponce,* 170 F.2d at 382 (citing *Rendell–Baker,* 457 U.S. at 543).

**3.** BU contends that the research plaintiff was conducting was not subject to regulation by the IRB. Because plaintiff alleges that his research protocol was subject to these regulations, the Court draws this inference in his favor.

In this case, the IRB did not work in tandem with BU to decide to dismiss plaintiff—the challenged activity. In fact, plaintiff's main complaint is that his protocol never reached the IRB because of a faculty member's alleged decision to flout the law. This is not enough to brace together the IRB and the School of Dentistry so as to turn the decisions of BU into state action.

### 4. *State Constitutional Claims*

Because the state action requirements under state and federal law are essentially the same, the Massachusetts constitutional claims fail as well. *See Tynecki,* 875 F.Supp. at 30 n. 5.

### *ORDER*

For the foregoing reasons, the Court *ALLOWS* Defendants' motion to dismiss Counts II, III, and IV and remands Counts I and V to state court (See Docket 4).