Lourdes ROLÓN, Plaintiff,

v.

**RAFAEL ROSARIO & ASSOCIATES, INC., et al., Defendant.**

**Civil No. 05–1988(DRD).**

United States District Court, D. Puerto Rico.

Aug. 31, 2006.

Jane A. Becker–Whitaker, Jane Becker Whitaker, PSC, San Juan, PR, for Plaintiff.

Carlos A. Bobonis–Gonzalez, Enrique G. Figueroa–Llinas, Bobonis, Bobonis & Rodriguez Poventud, San Juan, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

Pending before, the Court is defendants' *Motion to Dismiss the Amended Complaint and for Rule 11 Sanctions* (Docket No. 17) moving the Court to dismiss plaintiff's causes of action on two grounds, to wit, firstly, that the Court lacks subject matter jurisdiction to entertain the instant claim, and secondly, that plaintiff's claim should be dismissed for its failure to state a claim upon which relief may be granted and Plaintiff's opposition thereto, (D.18). For the reasons stated herein, the Court hereby **GRANTS** defendant's motion to dismiss and **DISMISSES** plaintiff's federal claim **WITH PREJUDICE.**

## STANDARD OF REVIEW

Although co-defendants' motion to dismiss is filed under both Rule 12(b)(1) and 12(b)(6) the matter is non-determinative since both motions are subject to similar threshold standards. See, *Murphy v. U.S,* 45 F.3d 520, 522 (1st Cir.1995); *Negron–*

*Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994); *Torres Maysonet v. Drillex, S.E.,* 229 F.Supp.2d 105, 107 (D.Puerto Rico 2002). When deciding a Motion to Dismiss, the Court must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor. *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998). To resolve factual disputes bearing upon the existence of jurisdiction, a court may review the evidence including affidavits and depositions. Once a defendant files a motion contesting the Court's subject matter jurisdiction, pursuant to Federal Rule 12(b)(1), it is the plaintiff's burden to establish that the Court has jurisdiction.

Federal Courts are courts of limited jurisdiction. This Court has the responsibility "to police the border of federal jurisdiction". *Spielman v. Genzyme Corp.,* 251 F.3d 1 (1st Cir.2001). The courts must "rigorously enforce the jurisdictional limits [standards] that Congress chooses . . ." *del Rosario Ortega v. Star Kist Foods,* 213 F.Supp.2d 84, 88 (D.P.R.2002)(citing *Coventry Sewage Associates v. Dworkin Realty Co.,* 71 F.3d 1, 3 (1st Cir.1995)). Therefore a party that seeks the jurisdiction of the Federal Courts, has the burden of demonstrating its existence. *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995).

### A. Motion to Dismiss under Rules 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Miranda v. Ponce Fed. Bank,* 948 F.2d 41 (1st Cir.1991). The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard,* 83 F.3d 1,3 (1st Cir. 1996) (citations omitted); see also *Berrios v. Bristol Myers Squibb Caribbean Corp.,* 51 F.Supp.2d 61 (D.P.R.1999). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 28 n. 2 (1st Cir.1996)(quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)).

Therefore, in order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley,* 851 F.2d 513. In sum, a claim shall be dismissed under Rule 12(b)(6) **only if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief.** *Conley,* 355 U.S. at 45, 78 S.Ct. 99. (Emphasis added.)

However, the Court is not obligated to accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson,* 83 F.3d at 3. The Court must only accept those facts that are "well pleaded", limiting its inquiry into the allegations of the complaint. *Litton Indus., Inc. v. Colon,* 587 F.2d 70, 74 (1st Cir.1978). In sum, the Court's focus should always be on "whether a liberal reading of [the complaint] can reasonably admit of a claim [. . .]." *Id.;* also *Rogan v. Menino,* 175 F.3d 75 (1st Cir.1999). A district court's dismissal of a claim under Rule 12(b)(6) is reviewed *de*

*novo* by the appeals court; such court "accept[s] as true all well-pleaded factual averments and indulg[es] all reasonable inferences in the plaintiff's favor." *Calderon–Ortiz v. LaBoy–Alvarado*, 300 F.3d 60, 62–63 (1st Cir.2002); *SEC v. SG Ltd.*, 265 F.3d 42, 46 (1st Cir.2001). Accordingly, "if the facts contained in the complaint, viewed in this favorable light, justify recovery under any applicable legal theory", any order of dismissal shall be set aside. *Calderon–Ortiz*, 300 F.3d at 63 (quoting *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *Aulson*, 83 F.3d at 3).

## FACTUAL BACKGROUND

Because the standard of review for a motion to dismiss under Rule 12(b) requires that the allegations in the complaint be examined in the light most favorable to plaintiff, the factual background is taken as averred by plaintiff in the Amended Complaint (Docket No. 12). Defendant, RRA is a private domestic corporation engaged in the business of providing information technology services. On or around April 14, 2002, plaintiff, Ms. Rolón was hired by RRA as a Sales Executive.[1] It is further alleged that plaintiff's brother Mr. Liberty Rolón, (Mr. Rolón) worked also for RRA, and the work product produced by the Rolóns and other RRA's employees "was aptly hailed in the industry as premiere".

At some point in time and during his employment within RRA, Mr. Rolón decided to start his own firm, providing services similar to the ones offered by RRA. However, plaintiff avers that before and after Mr. Rolon established his firm, conversations were held amongst Mr. Rolón and a number of RRA's employees geared towards said employees leaving RRA and joining Mr. Rolón's new enterprise. It is affirmatively averred by plaintiff, Ms. Rolón, that her brother never requested her to join the venture nor that said female plaintiff considered leaving RRA in order to join her brother's enterprise. Plaintiff sustains that even after Mr. Rolón started his firm, Mr. Rolón continued working with RRA on various joint ventures. It is also alleged by plaintiff that several of RRA's employees resigned RRA and joined Mr. Rolon's firm.

The Amended Complaint avers that on May 2005, co-defendant, Mr. Rosario met with Ms. Rolón and asked her whether she was considering joining her brother's firm or whether she was financing his venture. Plaintiff response to the inquiry was that she would always help her brother in any way he needed, that plaintiff did not believe that her brother needed plaintiff's help in his new venture, and that at the time she was not providing any help to her brother. The Amended Complaint states that the joint ventures between Mr. Rolon's firm and co-defendant RRA lasted until on or around late July 2005, and soon thereafter, the relationship between Mr. Rolón and his former employer, Mr. Rosario completely soured and broke down. Plaintiff sustains that on or around that time, Mr. Rosario instructed Roberto Morales, an RRA employee, to conduct an audit of plaintiff, Ms. Rolon's computer emphasizing in plaintiff's e-mail account and to look for any evidence of "improprieties".

Plaintiff sustains that the audit was conducted and it showed evidence of improper use of plaintiff's e-mail feature and that it had been also used by plaintiff to review a

---

1. Plaintiff's complaint and amended complaint state the date of hire as April 14, 2002, whereas in defendant's motion to dismiss the date of hire is stated as April 14, 2003. (See Docket No. 1, ¶ 9; Docket No. 12, ¶ 10; & Docket No. 17 ¶ 2.3.) The Court notes that the date of hiring is not relevant to entertain defendant's motion to dismiss.

document drafted by Mr. Rolón prior to his resignation from RRA. As to the alleged misuse of the e-mail feature, the audit evidenced that plaintiff Ms. Rolón had been forwarding Mr. Rolón certain messages addressed to him containing certain information relating to RRA's suppliers. The audit reflected that the e-mail messages had been received and forwarded to Mr. Rolón after his resignation from RRA. Further, the audit showed that plaintiff had used her e-mail feature to forward inspirational messages.

On August 2, 2005, plaintiff, Ms. Rolón, was terminated from employment for allegedly providing RRA's confidential information to plaintiff's brother and for allegedly collaborating with Mr. Rolón, a direct competitor to RRA, while being employed by RRA. Plaintiff alleges that after she was dismissed, she conveyed to RRA that in terminating her from employment, RRA had violated the Constitutions of the United States and Puerto Rico. Plaintiff's Amended Complaint sustains that she never provided any confidential information to Mr. Rolón and/or to his enterprise after his departure from RRA, that her computer also contained records showing similar collaboration with other competitors however, said other information was not considered as a justification for termination from employment; and finally, that other RRA's employees that held "much more comprehensive discussions" with plaintiff's brother relating to confidential information have not been dismissed from RRA. Plaintiff affirms that the grounds for her dismissal relates to her "constitutionally protected right to associate with a member of her own family".

On September 20, 2005, Ms. Rolón filed the instant complaint, later amended on November 14, 2005. The Amended Complaint charges defendants with conspiring for the purpose of depriving plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws pursuant to 42 U.S.C. § 1985(3). Plaintiff further charges defendants, under supplemental jurisdiction, with violations to the Constitution of the Commonwealth of Puerto Rico, further violation to various employment statutes and for mental distress, anguishes and suffering as a direct consequence of the constitutional and statutory violations to state and federal law.

On December 15, 2005, defendants filed the instant motion to dismiss without submitting to the Court's jurisdiction, (D.17). Defendants sustain that plaintiff's complaint fails to state a claim upon which relief can be granted, that the Court lacks subject matter jurisdiction, that plaintiff's claim failed to allege the necessary elements of a conspiracy pursuant to 42 U.S.C. § 1985(3); and that plaintiff is not a member of a protected class under § 1985(3).

On January 1, 2006, Ms. Rolón opposed defendant's motion to dismiss, (Docket 18), sustaining that claims under § 1985(3) are not limited to racial discrimination; that plaintiff's allegations of discrimination are based on her status as Mr. Rolón's sibling, a characteristic intrinsically similar to her race, gender, age and ethnic origin because it is immutable and permanent; that the alleged information plaintiff shared her brother after his departure from RRA was non-confidential in nature; and that the Constitution of the United States protects families and its citizens against invidious discrimination, such as being terminated from employment due to family ties.

The Court, having examined the parties' allegations in the light most favorable to plaintiff, construing the complaint liberally, taking all well pleaded facts as true, and indulging all reasonable inferences in favor of plaintiff and for the reasons stated hereinafter **GRANTS** defendant's *Motion to*

*Dismiss the Amended but Denies the Rule 11 Sanctions request.*

## LEGAL FRAMEWORK

### A. Right to familial association and § 1985(3) claims

In order to determine whether the Court has subject matter jurisdiction, the Court must first determine whether plaintiff has made a colorable claim under 42 U.S.C. § 1985(3). Section 1985(3) reads as follows:

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice–President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

The Court of Appeals for the First Circuit has pellucidly established the threshold to be reached by a plaintiff asserting a claim pursuant to § 1985(3). In, *Aulson v. Blanchard*, 83 F.3d 1 (1st Cir.1996) the First Circuit Court established that:

> [s]ection 1985(3) proscribes certain enumerated conspiracies. To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). In *Griffin*, the Supreme Court placed a gloss on these four elements, effectively adding a fifth requirement. It construed the statute's references to "equal protection" and "equal privileges and immunities under the laws" to signify that a plaintiff may recover thereunder only when the conspiratorial conduct of which he complains is propelled by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."

*Aulson v. Blanchard*, 83 F.3d at 3.

■ Generally, a conspiracy requires a meeting of the minds to achieve an unlawful end. Pleading a conspiracy under § 1985(3) "requires at least minimum factual support of the existence of a conspiracy." *Francis–Sobel v. University of Maine*, 597 F.2d 15, 17 (1st Cir.1979). Similarly, a dismissal is warranted should

the complaint fail to elaborate nor substantiate bald claims that a defendant conspired with one another. *Slotnick v. Garfinkle,* 632 F.2d 163, 166 (1st Cir.1980). Therefore, a plaintiff's complaint containing vague, conclusory allegations of conspiracy, without any specification of the agreement forming the conspiracy, fails to state a claim under § 1985. That is, the plaintiffs must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred. The failure to allege a conspiracy defeats a cause of action under § 1985(3). *Ochoa Realty Corp. v. Faria,* 634 F.Supp. 723, 726 (D.Puerto Rico 1986) (affirmed at 815 F.2d 812 (1st Cir.1987)). Thereafter mere allegations of misconduct by one person alone is insufficient to support a § 1985 claim, hence a complaint under § 1985(3) which fails to allege a conspiracy will not survive a motion to dismiss.

■ But even if there were allegations of a conspiracy, a § 1985(3) claim requires **a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws.** *Aulson v. Blanchard,* 83 F.3d at 3. This requirement establishes "that the conspiracy [be] 'aimed at interfering with the rights' that are 'protected against private, as well as official, encroachment'." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993)(citing *United Broth. Carpenters, Local 610 v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). That is, the resulting impairment must be a conscious objective of the conspiracy. The "purpose to deprive" requirement "demands that the defendant do more than merely be aware of a deprivation of right that he causes,

and more than merely accept it; he must act at least in part for the very purpose of producing it." *Bray,* 506 U.S. at 276, 113 S.Ct. 753.

■ Similarly, a § 1985(3) claim requires an overt act in furtherance of the conspiracy. This District Court has recognized that an over act in furtherance of the conspiracy is an essential element of the claim. In *El Mundo, Inc. v. Puerto Rico Newspaper Guild, Local 225,* 346 F.Supp. 106 (D.Puerto Rico 1972), the Court stated that:

[i]n a civil conspiracy, the conspiracy itself is not a cause of action, without overt acts, because again it is the overt act which moves the conspiracy from the area of thought and conversation into action and causes the civil injury and resulting damage. Accordingly, the cases hold that the damage in a civil conspiracy flows from the overt acts and not from the conspiracy. Therefore, the certainty [the Courts] look for in a proper complaint under the Civil Rights Statutes, is not in the general allegations of conspiracy, purpose, intent, but the certainty and substance in the particular acts which are alleged to have caused damage. The real question is whether or not the complaint sets forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff.

If sufficient allegations appear of the acts of one defendant among the conspirators, causing damage to plaintiff, and the act of the particular defendant was done pursuant to the conspiracy, during its course, in furtherance of the objects of the conspiracy, with the requi-

site, purpose and intent, then all defendants are liable for the acts of the particular defendant under the general principle of agency on which conspiracy is based.

*El Mundo, Inc.,* 346 F.Supp. at 114.

■■■ Moreover, in order to successfully allege a § 1985(3) claim the Supreme Court requires that plaintiffs allege **an otherwise class-based invidiously discriminatory animus behind the conspirators' action.** *United Brotherhood of Carpenters and Joiners of America v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). A complaint that fails to allege any facts that would tend to show that the alleged conspirators were motivated by such animus fails to state a colorable claim under § 1985(3). *Springer v. Seaman,* 821 F.2d 871 (1st Cir.1987). Accordingly, a complaint under § 1985(3) satisfies such requirement should it allege that there is discrimination against a cognizable, well-defined class and that such discrimination affects a traditionally disadvantaged group, is irrational, or unnecessarily burdens the plaintiff's exercise of a fundamental right. A class is recognized for purposes of the class-based animus requirement only when it is composed of a segment of the community which is distinctive and identifiable by reference to any objective criteria. *Aulson v. Blanchard,* 83 F.3d at 5–6. The requirement that the discriminatory conduct must be directed at a class of persons is not merely satisfied by alleging that there was a conspiracy which affected the interests of a class of persons similarly situated with the plaintiffs. *Harrison v. Brooks,* 519 F.2d 1358 (1st Cir.1975); *Perkins v. Penagaricano Soler,* 610 F.Supp. 94 (D.Puerto Rico 1985). Rather, "the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class, and that the criteria defining the class were invidious". *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir.1975) (citations omitted).

The final requirement for a § 1985(3) claim is met by plaintiff in one of two manners. Plaintiff may either claim an injury to his or her person or property, or a deprivation of a constitutionally protected right or privilege. The "rights and privileges" provision encompasses private conspiracies as well as actions under color of state law. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23 (1st Cir.1996). However, in the case of private conspiracies, as alleged in the instant case, the plaintiff must show that the conspiracy's object was a deprivation of a federal right secured against private infringement, in order to sustain the claim for a conspiracy to deprive a person of equal protection of laws, or equal privileges and immunities under laws. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

■■■ The Supreme Court has established that § 1985(3) is a purely remedial rather than substantive statute since it is aimed to redress the consequences of private conspiracies that violate clearly established existing rights. *Volunteer Medical Clinic, Inc. v. Operation Rescue, et al.,* 948 F.2d 218, 226 (6th Cir.1991). To fall within the remedial purview of the statute, a claimant must allege that he or she has suffered the violation of a right and the nature of the predicate right must be examined to determine whether the right exists against all private and/or state actors. *Id.* When an alleged conspiracy is aimed at a right that is by definition a right protected only from state interference, such as First and Fourteenth Amendment rights, the plaintiff must prove state involvement in the interference

with that right. *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

## B. EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT

### 1) State Action under the Fourteenth Amendment

■ As a general rule, the rights afforded by the Constitution protects individual citizens from state or federal governmental interference but generally does not shield individual citizens from other individuals' conduct. Relevant to the instant case, the Fourteenth Amendment protects individuals only against governmental action leaving private conduct to regulation by statutes and common law. *In re Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883).

However, the Supreme Court has extended individual citizens the same constitutional protection when private actors infringe the rights or privileges guaranteed by the Equal Protection Clause of the Fourteenth Amendment, and the Right of Association of the First Amendment. Consequently, under several doctrines set forth by the Supreme Court, acts performed by a nominally private entity may comprise state action—*e.g.,* if, with respect to the activity at issue, the private entity is engaged in a traditionally exclusive public function; is "entwined" with the government; is subject to governmental coercion or encouragement; or is willingly engaged in joint action with the government. *Brentwood Academy v. Tennessee Secondary School Athletic Association, et al.,* 531 U.S. 288, 295–296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001).

■ It is well-known that the Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall [ . . . ] deny to any person within its jurisdiction the equal protection of the laws." Pursuant to the "rights and privileges" requirement of § 1985(3), in order to determine whether a private actor may be found to be a state actor, this Court must examine the following:

> (1) whether there was a sufficient nexus between the state and the private actor which compelled the private actor to act as it did; (2) whether the private actor has assumed a traditionally public function; or (3) whether there is a sufficient "symbiotic relationship" between the state and the private actor so that the state might be recognized as a joint participant in the challenged activity.

*Missert v. Trustees of Boston University,* 73 F.Supp.2d 68, 71 (D.Mass.1999).

The nexus test rationale provides that the state exert a coercive force compelling the private actor to infringe a constitutionally protected right, *i.e.,* the application of state sanctions to enforce a rule that itself violates a constitutionally protected right. *Moose Lodge v. Irvis,* 407 U.S. 163, 179, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). As an exception, the Supreme Court has decided that in heavily regulated industries the required nexus between the state and private actor is not met merely by plaintiff alleging that the activity results in state action. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In such cases, the inquiry must be guided towards determining whether "there is a sufficiently close nexus between the State and the challenged action of the regulated industry so that the action of the latter may be fairly treated as that of the State itself". *Moose Lodge v. Irvis,* 407 U.S. at 176, 92 S.Ct. 1965. In said cases, a detailed inquiry may be required in order to determine whether the nexus test is met. *Burton v.*

*Wilmington Parking Authority*, 365 U.S. 715, 723, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

■ Under the public function doctrine, the Courts have identified certain functions within the sole province of government, that when performed by private actors, said private parties are consequently considered state actors. In accordance with this test, "a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State'." *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 352, 95 S.Ct. 449. Amongst the classic examples of a traditional a state's public function the Supreme Court have considered "the conduct of elections, *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), and the governance of a 'company' town'", *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). *Logiodice v. Trustees of Maine Cent. Institute*, 296 F.3d 22, 26 (1st Cir.2002)

■ Under the "symbiotic relationship doctrine," a private party is considered a state actor when the government has so far insinuated itself into a position of interdependence with that party that the government must be recognized as a joint participant in the challenged activity. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Barrios–Velazquez v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico*, 84 F.3d 487, 494 (1st Cir.1996)(symbiotic relationship doctrine considers whether the government "has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." (internal quotation marks omitted)).

■ The "entwinement doctrine" provides that acts performed by a private entity may comprise state action is if there is "pervasive entwinement" between the private entity and the government. *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). In *Brentwood Academy*, the Supreme Court ruled that "a private entity may be classed as a state actor when it is entwined with governmental policies or when government is entwined in [its] management or control". See, *Evans v. Newton*, 382 U.S. 296, 298, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966)(entwinement doctrine identifies state action in situations where neither the government nor the private entity controls a given sphere of activity, but both are so solidarily involved in that activity that the actions of the private actor in that sphere are "fairly attributable" to the state).

## 2) The Right of Association under the First Amendment

The Right of Association under the First Amendment is another constitutional right enforceable against infringement from private actors. The Supreme Court has examined this right in three separate ways. The first aspect is the individuals' right to associate to achieve economic or other goals that are unconnected to any fundamental constitutional right, like becoming a member of a labor association (*Railway Mail Association v. Corsi*, 326 U.S. 88, 93–94, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945)). The second aspect of the freedom to associate is protected by the fundamental right to privacy, including the freedom to maintain a relationship to members of one's family and defining the family members with whom one chooses to live (*Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)). Lastly, the Supreme Court has recognized a right to associate for the purpose of engag-

ing in types of activities expressly protected by the First Amendment, such as religious freedom and speech.

Plaintiff alleges that being terminated from employment because she forwarded e-mails to her brother after he no longer worked for RRA impaired her right to familial association as protected by the First Amendment of the Constitution of the United States. The right to familial association under the First Amendment may be asserted only in two limited circumstances. The first relates to the due process of the law protection, and is alleged when the state acts to directly change or affect the "parent-child relationship". The second category lies within the substantive due process of the law.

Under the first category the Courts have held the right to familial association in those situations wherein the state seeks to change or alter the relationship of parent and child in furtherance of a legitimate state interest. Such situations involve cases related to termination of parental rights (*Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)); procedures to determine paternity (*Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981)); and when deciding whether an unwed father may retain custody of his children after the mother's death (*Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)).

In *Santosky*, petitioners questioned the validity of a state statute that provided the state may terminate the rights of parents in their children upon finding the children were "permanently neglected" by showing of "fair preponderance of the evidence". The Supreme Court held that before a state may sever completely the rights of parents in their children, the due process protection requires that the state support its allegations of neglect by clear and convincing evidence using the standard of preponderance of the evidence.

In *Little*, the appellee averred a paternity suit against the alleged father of her child and requested that costs relating to the paternity test were provided by the State because she was indigent. The state court denied payment for such expenses based on the provisions of local law. The Supreme Court held that the local state statute precluding the state from assuming the costs of the paternity tests infringed the protection provided by the due process clause due to the appellee's lack of financial resources.

Finally, the *Stanley* Court reversed the local Illinois state Supreme Court's determination relating to state's statutory scheme in dependency proceedings on minor children. In *Stanley*, the children of an unmarried father were declared ward of the state and placed in guardianship upon their mother's death without affording any hearing on paternal fitness. The federal Supreme Court determined that the state action violated the father's due process right and ordered the State Court to conduct a hearing on fitness as a parent and proof of neglect before removing the children from the father's custody. Moreover, an examination of the procedural guarantees safeguarding the liberty interest afforded by the Fourteenth Amendment, shows that the Supreme Court intended to protected the right to familial association only when the government directly acts to sever or otherwise affect the parent's legal relationship with his minor child. *Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 8–9 (1st Cir.1986).

Under the category of substantive due process, the right to familial association has been upheld to prevent government interference in certain private decisions within the family nucleus. *Valdivieso Ortiz*, 807 F.2d at 8. The right may be suc-

cessfully claimed in instances wherein the government attempts to make a choice for the family. That is, the family has the right to choose for themselves without governmental intervention. In other words, the government is precluded from intervening in some established limited individual's rights on how to conduct his family affairs. *Id.* The relevant jurisprudence provides that such private decisions include, amongst other, a natural parent's interest in controlling the details of his/her child's upbringing, and in retaining the custody and companionship with the child (*Lassiter v. Dep't of Soc. Services,* 452 U.S. 18, 38–39, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)); defining the family with whom one chooses to live (*Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)); decisions related to procreation (*Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)); and whether to school one's children in religious as well as secular matters (*Pierce v. Soc. of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)).

Finally, the *Valdivieso Ortiz* Court ruled that:

> "[t]hese substantive due process cases do not hold that family relationships are, in the abstract, protected against all state encroachments, direct and indirect, but only that the state may not interfere with an individual's right to choose how to conduct his or her family affairs.... [T]h[is] right is one of preemption; rather than an absolute right to a certain family relationship ..."

*Valdivieso Ortiz,* 807 F.2d at 8.

### LEGAL ANALYSIS

As stated previously, plaintiff's federal claims allegedly arise under 42 U.S.C. § 1985(3) and infringement of plaintiff's constitutional rights under the First and Fourteenth Amendments of the Constitu-

tion as a result of being terminated from employment. The Court must first examine the substantive allegations to determine whether plaintiff has met the burden alleging a conspiracy of civil rights under § 1985(3) and then proceed to determine whether plaintiff's constitutional rights under the First and/or Fourteenth Amendment were violated by co-defendants.

Section 1985(3) imposes upon a plaintiff the burden to meet the five prongs set forth by *Aulson v. Blanchard* in order to successfully assert a colorable civil conspiracy claim for violation of civil rights however, since the Court is at a motion to dismiss stage, all the averments are accepted as true and all reasonable inferences must be indulged on behalf of the non-movant. At the outset, the first prong under § 1985 requires a conspiracy allegation, that is, plaintiff must effectively allege that an agreement existed between the co-defendants to conspire against her. A thorough examination of the averments in the complaint shows that the complaint is devoid of any allegations referring to a conspiracy by co-defendants. Similarly, plaintiff's complaint lacks averments relating to any type of communications, cooperation, or agreement amongst the co-defendants to conspire against the plaintiff and/or to deprive plaintiff from her civil rights.

■■■ The claim, as drafted, only alleges that at RRA prevailed an "atmosphere of witch hunt and paranoia" that contributed to the decision to terminate plaintiff from employment for the exercise of her right to maintain a familial relationship with her brother. This allegation is only conclusory as to a conspiracy because it lacks specific factual averments as to any agreements forming the conspiracy. In other words, the record is devoid of any factual support of the existence of a conspiracy. *Francis–Sobel v. University of Maine,* 597 F.2d at

17. At the most, the allegations, as drafted, are geared to show that plaintiff may have been subjected to a hostile work environment. It must be remembered that the court is not obligated to accept plaintiff's "bald assertions, unsupportable conclusions and periphrastic circumlocutions". *Aulson v. Blanchard*, 83 F.3d at 3. Therefore, the Court concludes that plaintiff has failed to successfully allege that a conspiracy was into effect against her.

The second prong for a valid § 1985(3) claim requires specific allegations showing that co-defendants had a purpose to conspire. The Court has thoroughly read the complaint and cast doubts as to the presence of allegations geared to establish a conspiracy within the body of the complaint. Furthermore, the Court can definitely ascertain that the allegations as drafted lack any averments that co-defendants conspired against plaintiff for the sole purpose of deprivation of a constitutional protected right. Contrariwise, plaintiff's averments show that she was subjected to employment termination because allegedly confidential information was transmitted to a competitor, plaintiff's brother. Moreover, the complaint sustains that other plaintiff's co-workers discussed confidential matters with plaintiff's brother and were not terminated from employment remaining as RRA's employees. Furthermore, the allegations, taken as true, alleges that there was a discriminatory animus against plaintiff and that said animus is evidenced by RRA's refusal to pay owed commissions. Hence, the Court deems that plaintiff has commingled her claims in an attempt to show a civil conspiracy for deprivation of civil rights when what the allegations expressed are merely that plaintiff may have been subjected to discriminatory treatment by her employer.

Notwithstanding, the second *Aulson* prong requires plaintiff to allege that defendant acted for the very purpose of depriving her from the alleged constitutional right. However co-defendants' conduct, as alleged, fails to show that defendants' actions were geared "at least in part for the very purpose of producing such [constitutional] deprivation". *Bray*, 506 U.S. at 276, 113 S.Ct. 753. That is, plaintiff has failed to allege that in order to continue to work for RRA she had to avoid contact with her brother or that the familial relationship with her brother was constitutionally affected in any manner by being terminated from employment. Therefore, plaintiff has also failed to meet the "purpose to conspire" prong.

The Court further concludes that the element of an overt act in furtherance of the conspiracy has not been met in the instant claim. Plaintiff alleges the overt act was her termination from employment. However, even if the allegations were construed on behalf of plaintiff, as the Court must analyze at the motion to dismiss stage, the termination of employment did not result in the furtherance of any conspiracy because no conspiracy has been properly alleged. Furthermore, the complaint fails to show with any certainty facts showing that co-defendants acted in such a way to carry into effect the alleged conspiracy. Consequently, in absence of acts performed by co-defendants plaintiff have failed to show that the proximate cause of injury resulted from said acts. *El Mundo, Inc.*, 346 F.Supp. at 114.

Assuming that the plaintiff has in effect plead a conspiracy with a purpose and that an overt act exists, a § 1985(3) claim requires the complaint be motivated by a class-based, invidiously discriminatory animus behind the conspirators action thus plaintiff must belong to a cognizable, well-defined class. Plaintiff affirms that she belongs to a class based on her status as her brother's sister, which according to

plaintiff, is as much permanent and immutable as her gender, race, age, and ethnic origin. Firstly, the opposition to the Motion to Dismiss is devoid of any legal authority supporting the existence of a class composed by the mere fact of being a sibling.

Moreover, it is the law in this Circuit that legal arguments alluded to merely in a perfunctory manner but unaccompanied by a developed argumentation, are deemed abandoned. *U.S. v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990); *Morales Feliciano v. Rullan,* 378 F.3d 42, 49 n. 4 (1st Cir.2004). Further, "it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones". *Id.* After all, "[J]udges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments square and distinctly,' or else forever hold its peace". *Id.,* citing *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988) (quoting *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co.,* 840 F.2d 985, 990 (1st Cir.1988)).

Precisely, this is what plaintiff has attempted in its presentation. Plaintiff has presented an argument moving the Court to accept the existence of a class based on her status as her brother's sister without providing the necessary skeletal legal backbone in support thereof. The Court shall not develop an argument as to the applicability of class when plaintiff failed in developing an argument of its applicability. *U.S. v. Zannino,* 895 F.2d at 17. Consequently, plaintiff's arguments as to the existence of said class is deemed abandoned.

Hence the Court deems that plaintiff has failed to represent a cognizable, well-defined class by herself nor any invidiously discriminatory animus behind the termination from employment. Furthermore, even if this Court was to follow the standard held at *Libertad v. Welch,* 53 F.3d 428 (1st Cir.1995) in that women are a protected class for the protections afforded by § 1985(3), plaintiff failed to allege that the instant claim was pursuant to her status as a women. Hence, plaintiff has also failed to meet this threshold element of a civil conspiracy under § 1985(3).

The final requisite for a valid § 1985(3) claim pursuant to *Aulson* requires that plaintiff suffer either an injury to her person or property, or a deprivation of a constitutionally protected right or privilege. This requirement constitutes the most challenging hurdle to surpass. The plaintiff avers that co-defendant RRA infringed her right to maintain a familial association with her brother pursuant to the First and Fourteenth Amendment, in its substantive due process modality. Therefore, the Court must perform a two-step analysis. Firstly, the Court must determine whether plaintiff may successfully invoke the First and Fourteenth Amendment as a protective statute. Then the Court must determine whether plaintiff may assert that the existence of a constitutionally protected right to familial association.

As stated previously, the relevant jurisprudence has determined that in order to receive the protection afforded by the First and Fourteenth Amendments, the movant must allege state interference with the constitutionally protected right. In this sense, the substantive due process modality of the Fourteenth Amendment pleaded as protective of the right to familial association requires also state action however, the Court points to the fact that the allegations show that co-defendant RRA is a private corporation. Thus, in order to successfully plead a cause of action under the Fourteenth Amendment of

the Constitution, the Court must determine whether RRA's actions, as a private entity, should be considered state action according to *Missert.*

■ The Court, faced at a motion to dismiss stage of the proceedings, takes as true all well pleaded facts. Accordingly, an examination of the complaint shows that nowhere within the face of the Amended Complaint plaintiff has alleged any type of state involvement in the daily or general operations of RRA. As a matter of fact, the complaint lacks any averment as to the government or any of its agencies and/or instrumentalities being in any way related to or involved with the co-defendants. The court finds no facts alleged to comply with the "public function" doctrine, nor the "symbiotic relationship" doctrine nor the "pervasive entwinement doctrine . . ." to prove the presence of state actions. Hence, plaintiff has failed to allege that co-defendants are in any way connected to or related with the Government. Therefore, the state action analysis is unnecessary since even making all reasonable inferences on plaintiff's behalf the necessary element of the presence of the state is totally absent from the instant allegations.[2]

As discussed previously, the relevant jurisprudence has recognized that the right to familial association is indeed constitutionally protected by means of the First and Fourteenth Amendments only in limited circumstances all recognized by the Supreme Court. Although the Court has

concluded that state action is required to sustain this claim, and that in the instant claim, there is no state action, the Court out of its generosity, cannot simply provide facts not present to sustain the constitutional cause of action.

In order for plaintiff sustain a claim that co-defendants infringed her right to maintain a familial association under the substantive due process modality of the Fourteenth Amendment, plaintiff must demonstrate that co-defendants interfered with her right to privately choose how to conduct her family affairs specifically, the sibling relationship with plaintiff's brother. The Courts have sustained under the Fourteenth Amendment the right to maintain familial association in limited circumstances, such as in *Valdivieso Ortiz, Lassiter, Moore,* and *Pierce.* However, the instant case does not fall within the purview of any of the named cases.

According to the allegations in the complaint, co-defendants deprived plaintiff of her constitutional right to relate to her sibling. The alleged deprivation resulted from co-defendants reluctance to allow plaintiff to provide "confidential suppliers information" to her brother who is in the same business as co-defendant, that is, defendant's direct competitor. The Court notes that plaintiff has failed to provide any case showing that the mere fact that an employer's refuses to allow an adult employee to communicate with its adult sibling during working hours, absent an emergency, activates the constitutional

2. Anyway, should the Court perform the required analysis to determine the presence of state action under any of the criteria discussed previously, the nexus test doctrine fails inasmuch the Amended Complaint fails to aver that co-defendants were forced by the Government or any of its agencies or instrumentalities to terminate plaintiff from employment. Similarly, under the "public function doctrine," the services provided by RRA are related within the information technology services which cannot be considered and/or classified as a traditionally public function. Under the "symbiotic relationship doctrine," the Amended Complaint is devoid of any allegation stating that RRA (the private actor) and the state have engaged in an interdependent relationship with one another. Further, under the "pervasive entwinement doctrine," the allegations failed to allege that the state or any of its entities is entwined with RRA's policies, management or control.

protection provided by the First and Fourteenth Amendment of the Constitution.

Based on the above discussion, plaintiff has failed to establish the subject matter jurisdiction of this Court by not properly alleging facts to comply with a civil conspiracy under § 1985(3) or that her claim is actionable pursuant to the protections provided by the First and Fourteenth Amendments of the Constitution.[3]

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS in part** co-defendant's RRA *Motion to Dismiss the Amended Complaint and for Rule 11 Sanctions* (Docket No. 17). Therefore, Ms. Rolón's federal claims are hereby **DISMISSED** against the appearing co-defendant **WITH PREJUDICE.** Furthermore, plaintiff's supplemental law claims under the laws of the Commonwealth of Puerto Rico will be **DISMISSED WITHOUT PREJUDICE** since early on in the case, the general rule is that the Court may discard the supplementary jurisdiction claims should federal claims be dismissed early on in the procedures. 28 U.S.C. § 1367(c); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, (1966); *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995); *Hernandez v. SmithKline Beecham Pharmaceutical,* No. 02–2750(DRD), 2006 WL 1580052, at *4 (D.Puetro Rico June 6, 2006). **Judgment** shall be issued accordingly.

**IT IS SO ORDERED.**

---

**3.** This Court also **DENIES** co-defendant's request for sanctions under Rule 11, Fed. R.Civ.P. since the actions under supplementary jurisdiction remain unscathed and are colorable and the matter of jurisdiction under 42 U.S.C. § 1985(3) is complex, intricate and not a run of the mill jurisdictional matter. The court can not consider plaintiffs assertion of jurisdiction temerarious or frivolous. The court prefers to opine that the constitutional conspiratorial threshold required was not met.