**Manny FOX, Cinda Fox, and their Conjugal Partnership, Plaintiffs,**

**v.**

**PALMAS DEL MAR PROPERTIES, INC., Palmas Del Mar Homeowners Association, Inc., Defendants.**

**Civil No. 07–2238 (DRD).**

United States District Court, D. Puerto Rico.

March 31, 2009.

Francisco R. Moya-Huff, Law Firm of Francisco R. Hoya Huff, San Juan, PR, for Jorge R. Acosta.

Fausto D. Godreau-Zayas, Latimer, Biaggi, Rachid & Godreau, San Juan, PR, for Maxon Engineering Services Inc.

Monsita Lecaroz-Arribas, U.S. Trustee Office, San Juan, PR, for US Trustee, Edificio Ochoa.

Rafael A. Gonzalez-Valiente, Latimer, Biaggi, Rachid & Godreau, San Juan, PR, for Noreen Wiscovitch-Rentas.

Eileen J. Barresi-Ramos, Barresi Law Office, Trujillo Alto, PR, Erick Morales-Perez, Erick Morales Law Office, Carolina, PR, for Milagros Ayala-Gonzalez.

Idza Diaz-Rivera, P.R. Department of Justice-Federal Litigation, San Juan, PR, for Police Department of Puerto Rico, Dr. Luis A. Quinones-Esquilin, The Commonwealth of Puerto Rico, Department of Justice, Pedro A. Toledo-Davila, Superintendent of Police of the Commonwealth of Puerto Rico.

Fernando J. Fornaris-Fernandez, James W. McCartney, Cancio, Nadal, Rivera & Diaz, San Juan, PR, for Conjugal Partnership Fox-Fox, Cinda Fox, Manny Fox.

Eduardo A. Zayas-Marxuach, Roberto C. Quinones-Rivera, Britt E. Arrieta-Rivera, McConnell Valdes, San Juan, PR, for Palmas del Mar Properties, Inc.

Doris Quinones-Tridas, Luisa Velazquez-Aparicio, Quinones Tridas Law Office, PSC, San Juan, PR, for Alvaro Aranda.

Julio Cesar, Alejandro-Serrano, Luis A. Alvarado-Hernandez, Luis A. Rodriguez-Munoz, Eduardo A. Vera-Ramirez, Landron & Vera LLP, Guaynabo, PR, for Conjugal Partnership Rosa-Rosa, Joseph J. Newman, Marilyn Rosa, Nelson Rosa.

Jaime E. Morales-Morales, Morales Morales Law Offices, Sari Juan, PR, for Miguel Garraton.

Jose A. Gonzalez-Villamil, Gonzalez Villamil Law Office, San Juan, PR, for Zulma Gonzalez.

Juan Antonio Pedrero-Lozada Arroyo, Monrouzean & Associates, San Juan, PR, for Hospital Auxilio Mutuo de Puerto Rico, Sociedad Espanola de Auxilio Mutuo y Beneficiencia, Incorporated, Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico.

Jorge J. Lopez-Lopez, Otero & Lopez, LLP, Freddie Perez-Gonzalez, Freddie Perez Gonzalez & Assoc. PSC, San Juan, PR, for Eugenio Portela.

Jose L. Gonzalez-Castaner, Gonzalez Castaner & Morales Cordero Law Office, Maria C. Taboas, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for William Taboas.

Luis F. Montijo, Montijo & Montijo Law Office, San Juan, PR, for Noel Totti.

Manuel A. Rodriguez-Banchs, Rio Piedras, PR, for Movimiento Solidiario Sindical.

Juan J. Casillas-Ayala, Enrique R. Padro, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Pepsiamericas, Inc.

Manuel E. Fuster, Manuel E. Fuster Martinez Law Office, Guayama, PR, for Super Roof & General Contractor.

## OPINION AND ORDER ADOPT-ING REPORT AND REC-OMMENDATION

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are the following motions: (a) defendant Palmas del Mar Properties, Inc. ("PDMPI")'s *Motion To Dismiss Amended Complaint* (Docket No. 28); (b) plaintiffs' opposition (Docket No. 29); and (c) PDMPI's reply to plaintiffs' opposition (Docket No. 34).

This case was referred to Chief, U.S. Magistrate Judge Justo Arenas ("Magistrate Judge") for a report and recommendation on October 27, 2008 (Docket entries No. 35 and 36). On February 17, 2009, the Magistrate Judge issued *Magistrate Judge's Report And Recommendation* (Docket No. 39). On February 18, 2009, the Court entered an *Order* shortening to five (5) days the period to object to the *Report and Recommendation* (Docket No. 40). Plaintiffs' objections to the *Report and Recommendation* were filed on February 25, 2009 (Docket No. 45). PDMPI's objections to the *Report and Recommendation* was filed on February 27, 2009 (Docket No. 48); and PDMPI's response to plaintiffs' objections was filed on March 4, 2009 (Docket No. 51). The Magistrate Judge recommended that PDMPI's motion to dismiss under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), be denied. The Magistrate Judge also recommended that all federal claims be dismissed, as well as the state law claims, and the request for attorneys fees (Docket No. 39). For the reasons set forth below, the Court agrees with the findings and recommendations made by the Magistrate Judge, and adopts *in toto* the *Report and Recommendation* (Docket No. 39).

### Analysis

 Any written objections must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the legal basis for such objections." L.Civ.R. 72(c). "Failure to file objections within the specified time waives the right to appeal the District Court's order." *U.S. v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir. 1986). Additionally, claims which are "not preserved by such objections are precluded upon appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992). Thus, timely objections are required in order to challenge the findings of a magistrate's recommendation, as well as the magistrate's failure to make additional findings. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994). Additionally, only objections to the magistrate's recommendation which are specified are preserved. *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993). Therefore, the objecting party is only entitled to a *de novo* review of the issues which are specifically raised by the objection. *See, e.g. U.S. v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *See also Gioiosa v. U.S.,* 684 F.2d 176, 178 (1st Cir.1982).

Fed.R.Civ.P. 72(b) provides that "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject or modify the recommended disposition...." Local Civil Rule 72(d) provides that "a district judge shall make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." The Court, however, is bound to make a *de novo* review when the objecting party has filed its objections timely. In the instant case, the record shows that

both plaintiffs and defendants filed their objections timely.

### Factual and Procedural Background

The Court adopts and incorporates the findings of fact made by the Magistrate Judge that are uncontested:

Plaintiffs advance their action against PDMPI and the Palmas del Mar Homeowners' Association ("PDMHA") under the citizen suit provision of the Endangered Species Act ("ESA"). 16 U.S.C. § 1540(G)(1). Plaintiffs claim that construction performed by defendants has unlawfully harmed the nesting area of certain endangered sea turtles, including the hawksbill sea turtle and green sea turtle. They also bring several causes of action under Puerto Rico law. They seek declaratory and injunctive relief as well as compensatory damages and attorney's fees. (Docket No. 21.)

The well-pleaded facts of plaintiffs' amended complaint are assumed true and set forth below in the light most favorable to plaintiffs. *Pérez Lang v. Corp. De Hoteles, S.A.*, 522 F.Supp.2d 349, 358 (D.P.R.2007). Plaintiff Cinda Fox owns several properties within Puerto Rico's Palmas del Mar residential complex, including a lot on the beach in the development known as Shell Castle. (Docket No. 21, at 1, ¶ 1.) "The beach at Shell Castle is a nesting area for endangered sea turtle species, including but not limited to the Hawksbill Sea Turtle ... and the Green Sea Turtle." (*Id.* at 2, ¶ 7.)

The Foxes used to walk the beach daily and derived great pleasure from observing the nesting sea turtles' activities. (*Id.* ¶ 8.) They monitored hatchlings and enjoyed watching the small turtles make their dash to the ocean. (*Id.*) They also spent time personally cleaning the beach to help the turtles in their dash. (*Id.*) The Foxes invited guests, including school children, to observe the turtles, and educated them regarding the importance of conserving these species' natural habitats and spawning sites. (*Id.*) In July 2006, contractors hired by PDMPI began construction on the beach at Shell Castle. (*Id.* at 3, ¶ 9.) The Foxes notified the Puerto Rico Department of Natural and Environmental Resources ("DNER") of this, and DNER ordered the contractors to cease construction. (*Id.* ¶¶ 10–11.) Antonio Maldonado, the Executive Director of PDMHA, then applied for permits from DNER on behalf of PDMPI, to allow PDMPI to perform construction and earth extraction on the beach at Shell Castle. (*Id.* ¶¶ 12–13.) This permit application did not disclose that the construction had already begun and had been halted. (*Id.* ¶ 13.) DNER issued a permit to PDMPI that contained significant restrictions and conditions. (*Id.* 14.) The PDMPI contractors proceeded to cut down trees, move earth, create ditches, alter and/or fill a waterway feeding into the ocean, and install a gravel roadway. (*Id.* ¶ 15.) The construction included "bulldozing and introducing heavy equipment in nesting areas of endangered sea turtles...." (*Id.* ¶ 16.)

A stated purpose for the construction was to improve access to the beach for area residents. (*Id.* at 5, ¶ 22.) "This improved access includes widening the access from" the street to the beach "so that golf carts and other vehicles can access the beach even though golf cart access is illegal and will increase the take [Fn. 3][1] of the endangered sea

---

**1.** Fn. 3 of the *Report and Recommendation* (Docket No. 39) states:

"The ESA prohibits the 'taking' of an endangered species." *Am. Bald Eagle v. Bhatti*, 9 F.3d 163, 165 (1st Cir.1993).

turtle species." (*Id.*) The complaint does not make clear that this widening ever took place or that any vehicles have actually accessed or driven on the beach. Nor do the factual allegations of the complaint indicate whether the construction is still ongoing or has concluded. Defendants attached an affidavit to their motion to dismiss averring that the construction concluded on September 29, 2006. (Docket No. 28–2.) This specific allegation is ignored in plaintiffs' opposition to defendants' motion to dismiss. (Docket No. 29.) In any event, plaintiffs accuse defendants of the unlawful "take" of the sea turtles under the Endangered Species Act by various means, including "adverse modification of the nesting habitat." (Docket 21, at 10, ¶ 48.)

In addition to their ESA claims, plaintiffs submit various claims under Puerto Rico law. They allege that defendants harassed them, reduced the value of their home, encroached upon their property, and polluted the waters of the general area. They seek revendication (a civil law analogue to replevin) and ejectment to remedy the encroachment. (*Id.* at 11–12, ¶¶ 56–61.) They also seek to recover for "unlawful transfer of title" by PDMPI, for violations of Puerto Rico environmental statutes, and for private nuisance. (*Id.* at 12–13, ¶¶ 62–70.) As a result of PDMPI's actions, the Foxes have suffered severe stress and mental anguish, and Manny Fox's heart condition has worsened. (*Id.* at 6, ¶ 29.)

Plaintiffs seek a declaration that defendants are in violation of sections 4(d) and 9 of the ESA (16 U.S.C. §§ 1533(d), 1538) and that defendants have encroached upon plaintiffs' property. (*Id.* at 13–14, ¶¶ A & F.) They request an order requiring removal of all structures illegally located at the Fox's property and enjoining any further construction at Shell Castle Beach that might cause "take" of sea turtles. (*Id.* ¶¶ B & F.) They seek a declaration nullifying an alleged transfer of Cinda Fox's property by defendants, and ask for compensatory damages of $50,000,000. Finally, they request attorney's fees, costs and expenses.

The Court supplements the procedural background to include plaintiffs' objections to the *Report and Recommendation* (Docket No. 45). Plaintiffs allege that the Magistrate Judge erred: (a) when finding that the "only issue as to standing is whether the plaintiffs have standing under Article III of the Constitution" of the United States; (b) when determining that plaintiffs failed to meet the third prong of the standing to sue test, that is, to show redressability; and (c) when "holding that the jurisdictional facts surrounding the construction as alleged in the Amended Complaint were severable from the facts underpinning the ESA claim-indeed, there would be no ESA claim absent the construction performed by the defendants ... the Court may not consider extrinsic evidence without converting the motion onto one for summary judgment ... it goes without saying that this case is not ripe for summary judgment adjudication." (Docket No. 45).

## Applicable Law and Discussion

### A. The Motion to Dismiss Standard under Fed.R.Civ.P. 12(b)(1).

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." (citations omitted). *Deniz v. Municipality*

---

"Take" as defined by the ESA "means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 15 U.S.C. § 1532(19).

*of Guaynabo,* 285 F.3d 142, 149 (1st Cir. 2002). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." 285 F.3d at 150.

Rule 12(b)(1) provides that a complaint will be dismissed if the court lacks subject matter jurisdiction. It is settled that the standard followed by the court when considering a dismissal request under Rule 12(b)(1), is that the court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998), as restated in *Rolón v. Rafael Rosario & Associates, Inc., et al.,* 450 F.Supp.2d 153, 156 (D.P.R. 2006). To determine jurisdiction under Rule 12(b)(1), the court may also review the evidence on record, including affidavits and depositions, as opposed to a dismissal request under any other subsection of Rule 12(b). "Another significant difference is that under Rule 12(b)(1) the Court is not restricted to the face of the pleadings but may consider extra-pleading materials, such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction." *Fernández Molinary, et als. v. Industrias La Famosa, Inc., et als.,* 203 F.Supp.2d 111, 114–115 (D.P.R.2002), citing *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). Once the jurisdiction of the court is challenged by the defendant through a motion to dismiss, "it is plaintiff's burden to establish that the court has jurisdiction." *Rolón,* 450 F.Supp.2d at 156.

"Federal Courts are courts of limited jurisdiction," *Rolón, supra,* thus, "this Court has the responsibility to police the border of federal jurisdiction" *Spielman v. Genzyme Corp.,* 251 F.3d 1 (1st Cir.2001), and "must rigorously enforce the jurisdictional limits [standards] that Congress chooses," *del Rosario Ortega v. Star Kist Foods,* 213 F.Supp.2d 84, 88 (D.P.R.2002)(citing *Coventry Sewage Associates v. Dworkin Realty Co.,* 71 F.3d 1, 3 (1st Cir.1995)), as restated in *Rolón,* 450 F.Supp.2d at 156.

■ In the instant case, PDMPI alleges that the Court lacks subject matter jurisdiction to entertain plaintiffs' claims, as there is no actionable case or controversy under Article III of the United States Constitution ("Art. III"). PDMPI argues that the complaint is directed to enjoin PDMPI from cleaning and constructing in the nesting area known as Shell Castle, where allegedly certain turtles have their habitat. However, PDMPI alleges that plaintiffs' claims are completely unfounded as the alleged cleanup was completed on or about September 29, 2006. *See* Docket No. 28, Exhibit No. 1, Unsworn Statement under Penalty of Perjury of Antonio Maldonado of August 8, 2008 ("Maldonado's affidavit").[2] The instant complaint was filed on December 26, 2007, and the amended complaint followed on June 20, 2008 (Docket No. 21). Hence, we agree with the findings made by the Magistrate Judge that there is no federal actionable cause of action for the Court to enjoin,

---

2. Mr. Maldonado stated in his affidavit:
 "2. As Executive Director of the Palmas del Mar Homeowners Association ("Homeowners"), I am aware of allegations made by Manny and Cinda Fox concerning alleged construction work that took place on or near the beach next to the Shell Castle subdivision of the Palmas del Mar development.

3. The work to which Manny and Cinda Fox refers was a general clean up of the green area and beach access property of Palmas del Mar Homeowners Association performed at the request of Homeowners and concluded on or about September 29, 2006. Thus, said work ended a long time ago and is no longer taking place."

hence, there is no subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

## B. *The Motion to Dismiss Standard under Fed.R.Civ.P. 12(b)(6).*

Rule 12(b)(6) provides that a complaint will be dismissed for "failure to state a claim upon which relief can be granted." "So, when the allegations in a complaint, however true, fall short of a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" (Citations omitted). *Bell Atlantic Corporation, et al. v. Twombly, et al.,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). In *Twombly,* 550 U.S. at 555 and 570, 127 S.Ct. 1955, the Court held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... (citations omitted) ... a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions not do, *see Papasan v. Allain,* 478 U.S. 265, 286 [106 S.Ct. 2932, 92 L.Ed.2d 209] (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). **Factual allegations must be enough to raise a right to relief above the speculative level,** *see* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed. 2004).
>
> ...
>
> Here, in contrast, we do not require heightened fact pleading of specifics, **but only enough facts to state a claim to relief that is plausible on its face.** Because the plaintiffs here have not nudged their claims across the line from **conceivable to plausible,** their complaint must be dismissed. (Emphasis ours).

*See also Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) ("Specific facts are not necessary; the **statements need only 'give the defendants fair notice of what the ... claim is and the grounds upon which it rests'**") (quoting *Twombly,* 127 S.Ct. at 1964) (emphasis ours); *Thomas v. Rhode Island,* 542 F.3d 944, 948 n. 4 (1st Cir. 2008) (the motion to dismiss standard followed in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) "no longer governs in light of *Twombly*" (quoting *Twombly,* 127 S.Ct. at 1964)); *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007) (citing *Twombly* ); and *Torres v. Bella Vista Hospital, Inc.,* 523 F.Supp.2d 123, 133 (D.P.R. 2007) (quoting *Twombly,* 127 S.Ct. at 1974). Thus, the new standard under *Twombly* is that a claim for relief must contain allegations that "are plausible on its face."

A district court's dismissal of a claim under Fed.R.Civ.P. 12(b)(6) is reviewed *de novo* by the Court of Appeals. *Thomas v. Rhode Island,* 542 F.3d at 948. "In doing so, we must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Thomas,* 542 F.3d at 948, citing *Clark v. Boscher,* 514 F.3d 107, 112 (1st Cir.2008).

█ In the instant case, the Court agrees with the findings of the Magistrate Judge that the amended complaint fails to state a claim, hence, dismissal under Fed. R.Civ.P. 12(b)(6) is warranted. The Magistrate Judge's recommendation is based on the uncontested statements made by PDMPI, which are supported by Maldonado's affidavit, and the fact that plaintiffs failed to controvert the fact that the "clean up of the green area and beach access property" was completed on September 29, 2006. *See* Maldonado's affidavit, Docket

No. 28, Exhibit No. 1. As to Maldonado's affidavit, plaintiffs now allege in their opposition: "Indeed, this affidavit is more telling for what it doesn't say than for what it says." (Docket No. 45). "It does not state that no further construction or general clean up similar to that described in the complaint would ever be undertaken in the future, and it is this potential for continuing harm that makes both the injunctive and declaratory relief sought by the plaintiffs redressable and thus cloaks the plaintiffs with Article III standing." (Docket No. 45). The Court disagrees with plaintiffs' argument, as being speculative at best. **"Factual allegations must be enough to raise a right to relief above the speculative level."** (Emphasis added). *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

Plaintiffs further allege that the new standard under *Twombly* is not applicable to the instant case, as *Twombly* is an antitrust case, which is distinguishable from the factual scenario of the case at bar. Moreover, plaintiffs allege that the Magistrate Judge erred by considering Maldonado's affidavit when determining whether the amended complaint may be dismissed under Fed.R.Civ.P. 12(b)(6), as "the Court may not consider extrinsic evidence without converting the motion onto one for summary judgment." Docket No. 45. The Court disagrees, and briefly explains.

In *Beddall, et al. v. State Street Bank and Trust Company,* 137 F.3d 12, 17–18 (1st Cir.1998), the Court held:

> A district court's central task in evaluating a motion to dismiss is to determine whether the complaint alleges facts sufficient to state a cause of action. In conducting that tamisage, the court need not accept a complaint's "bald assertions" or "unsupportable conclusions." *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.1987). **While a plaintiff only is obliged to make provable allegations, the court's inquiry into the viability of those allegations should not be hamstrung simply because the plaintiff fails to append to the complaint the very document upon which *by her own admission* the allegations rest. Any other approach would seriously hinder recourse to Rule 12 motions, as a plaintiff could thwart the consideration of a critical document merely by omitting it from the complaint.** We doubt that the drafters of the Civil Rules, who envisioned Rule 12(b)(6) motions as a swift, uncomplicated way to weed out plainly unmeritorious cases, would have countenanced such a result.

. . .

> First, the Agreement's centrality to the plaintiffs' contentions, as limned in their complaint, makes it in effect part of the pleadings, and, thus, differentiates its evaluation in conjunction with a motion to dismiss from the assessment of traditional extrinsic evidence. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). Second, and relatedly, the complaint predicates the plaintiffs' claims regarding the existence of the Bank's ostensible fiduciary duties solely on the Agreement, not on external events. **Lastly, the conversion of a Rule 12(b)(6) motion into a Rule 56 motion is a matter quintessentially within the purview of the district court's sound discretion.** *See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 18 (1st Cir.1992). (Emphasis added).

Hence, as stated in *Twombly,* a claim for relief must contain allegations that "are

plausible on its face," as opposed to "conceivable" claims. 127 S.Ct. at 1965, 1974.

In the instant case, the Court has taken as true the facts pled in the amended complaint, and "construe all reasonable inferences therefrom in favor of the plaintiffs, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory of the case." *Beddall*, 137 F.3d at 17, citing *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). Notwithstanding, the Court finds that the dismissal of the instant action is warranted under Fed.R.Civ.P. 12(b)(6), after having considered as true the facts pled in the amended complaint, as well as Maldonado's affidavit, which is indeed a "critical document" that is intrinsically related to the allegations of the amended complaint. Hence, the Court further finds that there is no actionable federal claims at the time the original complaint was filed, as amended thereafter.

■ The Court further finds that the Magistrate Judge did not abuse its discretion by considering Maldonado's affidavit when determining whether a dismissal under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) is warranted, without converting the motion to dismiss into a motion for summary judgment. The fact that the cleanup operation was terminated on September 29, 2006, is *per se* a determinative and critical fact that plaintiffs should have included in the allegations pled in the complaint, but chose not to. This fact is essential for the Court to determine whether the dismissal is warranted under either Fed.R.Civ.P. 12(b)(1) or 12(b)(6).

## C. *Standing to Sue: the third factor of the standing to sue test-Redressability.*

■ The Court hereby adopts and incorporates the analysis made by the Magistrate Judge as to plaintiffs' standing to sue, *albeit* the Court will concentrate the discussion on the redressability factor.

The Endangered Species Act was enacted in 1973 to protect various species of plants and animals from extinction in light of "economic growth and development untempered by adequate concern and conservation." *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 783 (9th Cir.1995) (citing 16 U.S.C. § 1531(a)). The Act vests authority in the Secretary of the Interior to compile and maintain a list of endangered species. 16 U.S.C. § 1531(a). Both the hawksbill sea turtle and the green sea turtle are on this list. 50 C.F.R. § 224.101.

The ESA grants private citizens the right to enjoin any person "who is alleged to be in violation of any provision of [the Act] or regulation issued under the authority thereof[.]" 16 U.S.C. § 1540(g)(1)(A). The ESA broadly provides that "any person may commence a civil suit" to enforce the ESA. 16 U.S.C. § 1540(g)(1); *Bennet[t] v. Spear*, 520 U.S. 154, 164–65 [117 S.Ct. 1154, 137 L.Ed.2d 281] (1997) (accepting "at face value" the term "any person" and holding that the plaintiff's grievance need not necessarily fall within the "zone of interests" protected by the ESA to state a claim). Plaintiffs therefore are entitled to bring suit under the ESA, but still bear the burden of establishing the three elements of standing:

First and foremost, there must be alleged (and ultimately proven) an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical.

Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained—of conduct of the defendant.

And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury.

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. [83] at 103 [118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)] (internal citations and quotations omitted).

As to the first element, "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 562–63 [112 S.Ct. 2130, 119 L.Ed.2d 351] (1992). "A plaintiff claiming injury from environmental damage must use the area affected by the challenged activity...." *Id.* at 565–66 [112 S.Ct. 2130] (lone basis for finding that injury in fact was lacking was that plaintiffs did not demonstrate definite plans to visit the habitat of the endangered species). But the court does not " 'demand ... detailed descriptions' of damages, such as a 'nightly schedule of attempted activities....' " *Id.* at 564 n. 2 [112 S.Ct. 2130]. Here, plaintiffs allege that they cleaned the beach area for the turtles, that they derived "great pleasure" from observing the nesting sea turtles, and that they even invited school children to the beach to teach them about the turtles. (Docket No. 21, at 2, ¶ 8.) Taking these allegations as true, plaintiffs have sufficiently demonstrated that they have used and observed the endangered species and their habitat for aesthetic and educational purposes. Plaintiffs allege that the bulldozing and heavy equipment in the turtle nesting area has adversely modified the nesting habitat, and has deprived plaintiffs of the ability to enjoy and teach about the endangered species. *See* 50 C.F.R. § 17.3 (impairment of breeding, sheltering, and feeding constitutes "harm" under the statute). Thus, they have established the first prong of standing as to the injury caused by the construction.

Plaintiffs fail, however, to establish this first prong as to their complaints of improved golf cart access to the beach. (Docket No. 21, at 5, ¶¶ 22–23.) "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 185 [120 S.Ct. 693, 145 L.Ed.2d 610] (2000). As noted above, the complaint is devoid of any allegation that any golf cart has been driven onto the beach. The complaint is not even clear that this improved access ever materialized beyond a "stated purpose for the construction." (Docket No. 21, at 5, ¶ 22.) In any event, a plaintiff with standing must have suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. at 560 [112 S.Ct. 2130]. Plaintiffs assert that the result of the improved access "has been and will continue to be that golf carts and other vehicles will be driven directly onto the beach, to the detriment of nesting sea turtle populations." (Docket No. 21, at 5, ¶ 23) (emphasis added). They assert that golf cart access "will increase the take of the endangered sea turtle species." (*Id.* ¶ 22) (emphasis added).

As established below, the construction in question was complete by September 29, 2006. (Infra at 17–18.) The amended complaint was filed in June 2008. Certainly, if the threat of golf cart access to the beach were "actual or imminent" as opposed to "conjectural or hypothetical," the carts would have accessed the beach by the date of the amended complaint's filing, about 21 months after construction's completion. Plaintiffs, however, are unable to allege any specific inci-

dents of golf cart beach access in their complaint. Accordingly, plaintiffs have not suffered injury in fact by virtue of any golf cart beach access, and therefore lack standing to sue as to this particular claim.

The next element of standing is a casual connection between the injury and the conduct complained of. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. at 103 [118 S.Ct. 1003]. Plaintiffs assert, and defendants do not deny, that PDMPI and/or PDMHA ordered the construction at Shell Castle beach. Thus there exists a fairly traceable connection between the plaintiff's injury—loss of use of the turtles and their habitat—and defendants' complained-of activities—the construction around the beach.

**Plaintiffs nonetheless fail to establish the third element requiring redressability. Plaintiffs bear the burden of a establishing a plausible showing of redressability.** *See Bell Atl. Corp. v. Twombly,* 127 S.Ct. at 1974; *Loggerhead Turtle v. County Council of Volusia County, Fla.,* 148 F.3d 1231, 1253 (11th Cir.1998) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. at 561 [112 S.Ct. 2130]). "[I]t **must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'**" *Lujan v. Defenders of Wildlife,* 504 U.S. at 561 [112 S.Ct. 2130] (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38 [96 S.Ct. 1917, 48 L.Ed.2d 450] (1976)).

Here, the injury asserted is harm caused the turtles by defendants' construction. The remedy sought is an injunction against further construction that might harm the turtles. The issue is thus whether the harm would be redressed by an injunction against further construction. I conclude that it would not be because plaintiffs do not plausibly allege that the construction is ongoing or imminent.

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan v. Defenders of Wildlife,* 504 U.S. at 564 [112 S.Ct. 2130] (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 [103 S.Ct. 1660, 75 L.Ed.2d 675] (1983)). **Where a complained-of violation has already taken place, and there is no continuing violation of law, an injunction affords no redressability.** *See Steel Co. v. Citizens for Better Env't,* 523 U.S. at 108–09 [118 S.Ct. 1003] ("Because respondent alleges only past infractions of [law], and not a continuing violation or the likelihood of a future violation, injunctive relief will not redress its injury."); *Gwaltney of Smithfield v. Chesapeake Bay Found.,* 484 U.S. 49, 59 [108 S.Ct. 376, 98 L.Ed.2d 306] (1987) (the harm sought to be addressed by the citizen suit provision of the Clean Water Act, whose citizen suit provision is essentially identical to that of the ESA, "lies in the present or the future, not in the past."). Unless "threatened injury is one of the gravamens of the complaint," injunctive relief should not be awarded because it "cannot conceivably remedy any past wrong but is aimed at deterring [those subject to it]." *Steel Co. v. Citizens for Better Env't,* 523 U.S. at 108 [118 S.Ct. 1003]. "[G]eneralized interest in deterrence . . . is insufficient for purposes of Article III." *Id.* at 108–09 [118 S.Ct. 1003] (citing *Los Angeles v. Lyons,* 461 U.S. at 111 [103 S.Ct. 1660]).

. . .

Plaintiffs here had a full and fair opportunity to present facts and arguments to contradict the allegation that construction had concluded long before they filed a complaint, but chose not to do so. If anything, plaintiffs bolstered defendants' claims that the construction was com-

plete before the complaint was filed by consistently referring to the construction in the past tense in their opposition memorandum. **In light of defendants' affidavit and plaintiffs' failure to contest it despite ample opportunity to do so, I conclude that the construction concluded before plaintiffs filed their complaint.**

**Thus, an injunction would have served no purpose at the time of filing because the construction, and thus the harm, had already taken place. Plaintiffs therefore lacked redressability at the time of filing. Because "standing is assessed at the time the action commences,"** *Becker v. Fed. Election Comm'n,* 230 F.3d 381, 389 (1st Cir.2000) (quoting *Advanced Mgmt. Tech., Inc. v. FAA,* 211 F.3d 633, 636 (D.C.Cir.2000)), **this lack of redressability when the suit was filed means plaintiffs have no standing to seek an injunction, and the claim for injunctive relief should be dismissed.**

Plaintiffs' request for declaratory judgment must be dismissed for largely the same reason. "[F]ederal courts do not issue advisory opinions." *Igartua-de la Rosa v. United States,* 417 F.3d 145, 153 (1st Cir.2005). The requirement that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision ... applies with undiminished force to actions for declaratory judgment." *Id.* (citing *Calderón v. Ashmus,* 523 U.S. 740, 745 [118 S.Ct. 1694, 140 L.Ed.2d 970] (1998)). Where a plaintiff has suffered injury in the past, but cannot establish that the prospect of repeated injury is "of immediacy and reality," there is insufficient basis to enter a declaratory judgment. *City of Los Angeles v. Lyons,* 461 U.S. at 104 [103 S.Ct. 1660] (denying declaratory relief that would bar the use of chokeholds by police, because plaintiff could not establish the likelihood that he would be

personally subjected to a chokehold in the future, even though he had been so subjected in the past). Here, plaintiffs do not even allege that future construction on the beach by defendants is a threat. Even if they had made such an allegation, they would be hard pressed to demonstrate its plausibility, given that well over two years have now passed without any sign of further beachfront construction. Because plaintiffs do not set forth an actual case or controversy, I recommend that their request for declaratory relief be dismissed as well. (Emphasis added).

In sum, "[t]he requisite elements of Article III standing are well established: 'A plaintiff must allege personal injury traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *CoxCom, Inc. v. Chaffee, et al.,* 536 F.3d 101, 108 (1st Cir.2008), citing *Hein v. Freedom From Religion Found., Inc.,* 551 U.S. 587, 127 S.Ct. 2553, 2562, 168 L.Ed.2d 424 (2007) (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). Hence, "[t]o proceed, he or she must 'adequately establish: (1) an injury in fact ..., (2) causation ..., and (3) redressability.'" *SBT Holdings, LLC, et al. v. Town of Westminster, et al.,* 547 F.3d 28, 37 (1st Cir.2008), citing *Sprint Communications Co. v. APCC Servs., Inc.,* —— U.S. ——, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008).

In the instant case, aside from the remedies of injunction relief and declaratory judgment, plaintiffs also seek the amount of $50,000,000.00 for compensatory damages, and attorneys fees. "The Foxes seek compensatory damages for the violation of their property interests, diminution in the value of their property and pain, suffering, emotional and mental anguish in amount not less that $50,000,000.00." (Docket No. 21). The Court finds that the amended complaint is devoid on any facts that may

establish that plaintiffs' property interests were violated; that the value of their property has diminished due to the beach clean up which was completed on September 29, 2006; and, certainly conceivable claims as to suffering, pain, emotional and mental anguish, fail to meet the third factor of the standing to sue test, that is, redressability. The factual allegations pled in the amended complaint are speculative, and fail to state a redressability claim that is "plausible on its face." *Twombly,* 127 S.Ct. at 1965, 1974. As stated by the Court in *Twombly:* "Here, in contrast, we do not require heightened fact pleading of specifics, **but only enough facts to state a claim to relief that is plausible on its face.** Because the plaintiffs here have not nudged their claims across the line from **conceivable to plausible,** their complaint must be dismissed." (Emphasis added). 127 S.Ct. at 1965, 1974.

### Conclusion

For the reasons set forth above, the *Magistrate Judge's Report and Recommendation* (Docket No. 39), granting PDMPI's motion to dismiss amended complaint (Docket No. 28), is hereby adopted and incorporated *in toto.* "The Court need not go further for it refuses to write at length to no other end than to hear its own words resonate as to the instances alleged as errors by plaintiff." Where as here, a [Magistrate] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply "to hear its own words resonate." *See Lawton v. State Mut. Life Assu. Co. Of Am.,* 101 F.3d 218, 220 (1st Cir.1996); *In Re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d 36, 38 (1st Cir.1993). Judgment will be entered accordingly.

IT IS SO ORDERED.